# EXHIBIT A

| AOC-105 | Doc. Code: CI | | Case No. | *10-C1-751* |
|---|---|---|---|---|

AOC-105          Doc. Code: CI
Rev. 1-07     05/13/2010 01.54 pm
Page 1 of 1       Ver. 1.02
Commonwealth of Kentucky
Court of Justice    www.courts.ky.gov
CR 4.02; CR Official Form 1

**CIVIL SUMMONS**

Case No. *10-C1-751*

Court  ☑ Circuit  ☐ District

County  Pike

**PLAINTIFF**

Sai                    P              Gutti                          MD
306 Northmonte Pointe

Pikeville              Kentucky       41501

VS.

**DEFENDANT**

Yathra Corporation
1201 Northeast Peachtree Street
Suite 1204
Atlanta                Georgia        30361

**Service of Process Agent for Defendant:**

CT Corporation System

1201 Northeast Peachtree Street

Suite 1204

Atlanta                              Georgia              30361

**THE COMMONWEALTH OF KENTUCKY
TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: _5 - 14_ , 2 _010_          *W. David Deskins*          Clerk

By: *Cora Adkins*          D.C.

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

_____

this ___ ___ day of _____, 2_____.

Served by: _____

_____ Title

PIKE CIRCUIT COURT
35th JUDICIAL CIRCUIT
DIVISION _I_

Civil Action No. _10-CI-751_

SAI P. GUTTI, M.D. and                                              **PLAINTIFFS**
SUJATA R. GUTTI, M.D.


v.                                    **COMPLAINT**


CHOWDARY YALAMANCHILI;
CNC INVESTMENTS, INC.;
CHAITANYARAHDAM, LLC;
YATHRA CORPORATION;
And CNC-SWAGAT MASTER INTERSTS, LLC.                    **DEFENDANTS**


* * * * * * * * * * * *


**SERVE:**

Chowdary Yalamanchili
1435 Cornerstone Village Drive
Apartment 511
Houston, Texas 77014

CNC Investments, Inc.; Chaitanyarahdam, LLC;
Yathra Corporation; and CNC-Swagat Master
Interests, LLC
CT Corporation System
1201 Northeast Peachtree Street
Suite 1204
Atlanta, Georgia 30361

Come the Plaintiffs, Sai P. Gutti, M.D., ("Dr. Sai Gutti") and Sujata R. Gutti, M.D. ("Dr.

Sujata Gutti") (collectively, "Plaintiffs" or "the Guttis"), by counsel, and for their Complaint

against Defendants Chowdary Yalamanchili ("Yalamanchili"), CNC Investments, Inc. ("CNC"),

Chaitanyarahdam, LLC ("Chaitanyarahdam"), Yathra Corporation ("Yathra"), and CNC-Swagat

Master Interests, LLC ("CNC-Swagat"), respectfully state as follows:

1

## INTRODUCTION

1.      CNC Investments, Inc. is a Houston, Texas-based real estate investment company which, according to claims on its website, "was originated with the concept of creating equity for the future.  With assets currently valued in excess of $2.0 billion, and a staff of over 1000 highly trained and skilled professionals, CNC Investments continues to increase its asset base while significantly improving net worth through the procurement of properties at less than fair market value, effective management of construction, property rehabilitation, and site-management internally."  Defendant Yalamanchili founded CNC Investments in 1982, and engages in the direct solicitation of private investors to commit funds for the purchase of such real estate, much of which constitutes real estate investments involving apartment complexes and other rental properties in the Southeastern United States.

2.      In connection with the acquisition of the above-described rental properties, Yalamanchili creates limited-liability business entities that in turn obtain loans from a variety of financial institutions used for the purchase of real estate with the assistance of funds from Yalamanchili's privately solicited investors, each of whom allegedly become shareholders in the entity holding title to a given property.  However, in order to maintain complete control over the management of the rental properties, Mr. Yalamanchili's standard practice is to designate himself the Managing Member or Sole Director of the respective holding companies.  Therefore, company shareholders/Members are excluded from the day-to-day management of the rental properties, and have no active role in the care or maintenance of the properties subject to their investment with Yalamanchili.

3.      This case involves a civil action by Sai P. Gutti, M.D., and Sujata R. Gutti, M.D., husband and wife, against Yalamanchili, CNC Investments, Inc., and several limited liability

2

entities formed by Yalamanchili in connection with the purchase of rental properties in Florida, Texas, and Georgia. More specifically, beginning in 2003, Mr. Yalamanchili directly solicited funds from the Guttis with fraudulent promises and representations that certain proposed real estate investments, described in more detail below, would yield a high rate of return. As of the date of this Complaint, however, the Guttis have invested over $1.3 million of their personal funds in properties managed by Mr. Yalamanchili and various limited-liability entities created by him, with no return on their investment. In addition to the fraudulent procurement of the Guttis' funds, Plaintiffs maintain that Mr. Yalamanchili grossly and negligently mismanaged the properties at issue, thus causing further damage to Plaintiffs' finances.

4.     As a result of Defendants' fraudulent and grossly negligent conduct associated with the solicitation of Plaintiffs' funds and the management of the rental properties at issue, Plaintiffs' Complaint includes claims for Breach of Fiduciary Duty, Fraud and Fraudulent Misrepresentation, Unjust Enrichment, Conversion, Civil Conspiracy, as well as an Accounting.

## PARTIES, JURISDICTION, AND VENUE

A.     **The Plaintiffs.**

5.     Plaintiff Sai P. Gutti, M.D. is a board-certified anesthesiologist residing at 306 Northmonte Pointe, Pikeville, Pike County, Kentucky 41501. Dr. Sai Gutti practices pain medicine in Pike County, Kentucky.

6.     Plaintiff Sujata R. Gutti, M.D. is a board-certified neurologist residing at 306 Northmonte Pointe, Pikeville, Pike County, Kentucky 41501. Dr. Sujata Gutti is Dr. Sai Gutti's wife and practices neurology in Pike County, Kentucky.

3

**B.**     **The Defendants.**

7.      Plaintiffs are informed and believe, and therefore allege that Defendant Yalamanchili is an individual residing at 14365 Cornerstone Village Drive, Apartment 511, Houston, Texas 77014. Yalamanchili is the founder, president, and CEO of CNC Investments, Inc.  Furthermore, Yalamanchili is the founder/president/member/CEO and/or director of Yathra Corporation, CNC-Swagat Master Interests, LLC, and Chaitanyarahdam, LLC.  Through CNC Investments, Inc., Yalamanchili was responsible for directly soliciting funds from Plaintiffs for purposes of investment in real estate owned by the above-listed entities.

8.      Plaintiffs are informed and believe, and therefore allege that CNC Investments, Inc. ("CNC") is a for-profit corporation incorporated in the state of Texas and doing business in the state of Texas and nationwide.  CNC's principal executive office is located at 4420 FM 1960 Road West, Houston, Texas 77068.  According to its website, CNC Investments "has invested in land, multi-family residential, retail, and office assets. The company has experienced phenomenal growth that encompasses over 120 properties, comprised of over 32,000 residential units and over 300,000 square feet of multi-level professional office buildings.  The company currently manages more than $2.0 billion in real estate assets." Yalamanchili operates CNC for purposes of soliciting investments in real estate that is owned by other limited liability entities created by him.

9.      Plaintiffs are informed and believe, and therefore allege that Defendant Chaitanyarahdam, LLC is a Limited Liability Company formed in the state of Florida in May of 2003 and doing business in the state of Florida through its acquisition and management of Princeton Square Apartments ("Princeton Square"), 8231 Princeton Square Boulevard West, Jacksonville, Florida 32256.  Furthermore, at all times relevant hereto, Chaitanyarahdam actively

4

engaged in business in the commonwealth of Kentucky through its solicitation of investment capital from the Plaintiffs for the acquisition of Princeton Square. Chaitanyarahdam's principal executive office is located at 4420 FM 1960 Road West, Houston, Texas 77068

10.    Plaintiffs are informed and believe, and therefore allege that Defendant Yathra Corporation is a for-profit corporation incorporated in the state of Georgia in September of 2003 and doing business in the state of Georgia through its acquisition and former management of Belmont Landing Apartments, 8104 Webb Road, Riverdale, Georgia, 30274. At all times relevant hereto, Yathra also engaged in business in the commonwealth of Kentucky through its solicitation of investment capital from the Plaintiffs for the acquisition of Belmont Landing. Yathra's principal executive office is located at 4420 FM 1960 Road West, Houston, Texas 77068.

11.    Plaintiffs are informed and believe, and therefore allege that Defendant CNC-Swagat Master Interests, LLC is a Limited Liability Company formed in the state of Delaware in October 2004 and doing business in the state of Texas and Florida through its acquisition and management of the "Berkshire Realty Portfolio," a composite of 18 rental properties, with 16 located in Texas and 2 located in Florida, which CNC-Swagat purchased for approximately $275,850,000. At all times relevant hereto, CNC-Swagat also engaged in business in the commonwealth of Kentucky through its solicitation of investment capital from the Plaintiffs for the acquisition of the Berkshire Realty Portfolio. CNC-Swagat's principal executive office is located at 4420 FM 1960 Road West, Houston, Texas 77068.

C. **Jurisdiction And Venue**.

12.      This Court has jurisdiction over the subject matter of this action because the Plaintiffs' claims against the Defendants arise out of acts or omissions of one or more of the Defendants in Pike County, Kentucky.

13.      This Court has personal jurisdiction over each of the Defendants in this action pursuant to the provisions of KRS § 454.210 (the "Kentucky Long Arm Statute") because each Defendant during the relevant period of time had minimum contacts with the Commonwealth of Kentucky as a result of their fraudulent scheme directed at the Plaintiffs in connection with the solicitation of funds for the real estate investments described herein. Each of the Defendants has either transacted business with the Plaintiffs or one or more of them and/or has sought and/or received the payment of funds in connection with the transactions which form the subject matter of this Complaint, thus subjecting Defendants to personal jurisdiction herein. Each of the Defendants has also participated in a fraudulent scheme directed at the Plaintiffs and has thus derived substantial revenue from the fraudulent and grossly negligent activities which are the subject matter of Plaintiffs' Complaint.

14.      Venue is proper in Pike County, Kentucky because a substantial part of the events or conduct giving rise to the Plaintiffs' claims occurred in Pike County, Kentucky and because each of the Defendants is subject to personal jurisdiction within the Commonwealth of Kentucky.

D. **Information And Agency Allegations**.

15.      The Plaintiffs are informed and believe, and therefore allege that the Defendants are the agents of one another, that all acts performed by each and every Defendant were within the course and scope of that agency relationship and that the Defendants thus acted pursuant to a

fraudulent conspiracy directed at the Plaintiffs with respect to the real estate investment transactions described herein.

**FACTUAL ALLEGATIONS**

A.      **The Plaintiff's Dealings With Yalamanchili And CNC.**

16.      Beginning in 2002, Plaintiffs, through various friends and acquaintances in their community in Pikeville, Kentucky, learned of potential real estate investment opportunities through Yalamanchili and CNC.  Plaintiffs are informed and believe, and therefore allege that due to Plaintiffs' interest in these supposed investment opportunities, one or more friends or acquaintances supplied Yalamanchili with Plaintiffs' contact information to allow Yalamanchili and CNC to solicit funds from Plaintiffs for several proposed real estate acquisitions.

17.      At all times relevant hereto, Yalamanchili, CNC, and the other entity-Defendants described herein solicited funds from Plaintiffs via telephone, in person, via e-mail, or via the U.S. Postal Service by directly contacting Plaintiffs in Pikeville, Pike County, Kentucky with information concerning the real estate investment transactions which are described in this Complaint.  Yalamanchili and CNC's contact with Plaintiffs has continued through the present date, however, such contact has become sporadic and Yalamanchili has become elusive in responding to Plaintiffs' concerns regarding their investments with the entities described below.

18.      Due to Yalamanchili's elusiveness; the lack of profit attained by any of Plaintiffs' investments solicited by Yalamanchili and CNC; the highly-leveraged nature of Yalamanchili's proposed transactions; and Yalamanchili's persistence in soliciting additional funds from Plaintiffs and other investors despite a complete lack of positive growth with respect to any of Yalamanchili's proposed investments, Plaintiffs are informed and believe and therefore allege that Yalamanchili, through CNC and the other entity-Defendants described herein,  has at all

7

times relevant hereto been engaged in a Ponzi scheme which to date has become unsustainable, all to Plaintiffs' detriment.

**B.** **The Chaitanyarahdam Transaction (Princeton Square Apartments).**

19. On or about May of 2003, Yalamanchili and CNC solicited funds from Plaintiffs via telephone and/or the United State Postal Service and/or in person to be used for the purchase of Princeton Square Apartments, a large apartment community in Jacksonville, Florida.

20. On or about May 22, 2003, Yalamanchili formed Chaitanyarahdam, a Florida Limited Liability Company, for purposes of acquiring Princeton Square from ERP Operating Partnership, and Illinois limited partnership. Yalamanchili designated himself Managing Member of Chaitanyarahdam, thus retaining exclusive power to bind the entity and manage Princeton Square.

21. By way of Yalamanchili and CNC's solicitation of Plaintiffs' funds, on or about May of 2003 Plaintiffs purchased a 4.125% equity membership interest in Chaitanyarahdam for $90,000.

22. Chaitanyarahdam closed the purchase of Princeton Square from ERP Operating Partnership on or about May 30, 2003.

23. On July 15, 2003, Yalamanchili delivered a memorandum to Plaintiffs and other investors informing them that it would take "3 to 6 months to stabilize [Princeton Square]. [Princeton Square has] a very good supervisor as well as good employees. Things are going well."

24. On October 16, 2003, Yalamanchili issued another memorandum to Plaintiffs informing them that they were to receive a quarterly cash flow distribution check "based on [their] share value at 8% return of investment." As of the date of this Complaint, Plaintiffs have

8

received no return on their investment in Chaitanyarahdam, with the entity reporting a <u>negative</u> cash flow of $1,727,658.00 for Princeton Square as of September 2008. All claims by Yalamanchili that Princeton Square could be "stabilized" have proven to be unfounded, as have his claims that the complex is being overseen by "a very good supervisor as well as good employees."

25.   On November 8, 2008, Dr. Bapuji Narra and his wife Kamala Narra, also investors in Chaitanyarahdam, visited Princeton Square due to concerns surrounding reports of poor conditions on the property. Both Dr. and Mrs. Narra reported that Princeton Square was in dire physical condition, with up to 88% of all residential units needing repairs or replacement items. Furthermore, Dr. and Mrs. Narra reported that the common areas of the complex were not well maintained, and that no maintenance personnel were available at the complex to provide assistance to tenants.

26.   In order to protect their initial investment and at Yalamanchili's request, Plaintiffs contributed an additional $8,500 capital infusion to Princeton Square to assist with the persistent cash flow issues and the need for improvements to the Princeton Square property – a need confirmed by Dr. and Mrs. Narra's personal visit to the complex. To date, this and all other investments made by Plaintiffs in the Princeton Square property have yielded no positive results, and the financial and physical condition of Princeton Square has continued to deteriorate.

27.   Plaintiffs are informed and believe and therefore allege that the poor financial and physical condition of the Princeton Square property is the direct and proximate result of Yalamanchili's grossly negligent and/or deliberately wanton performance of his duties as Managing Member of Chaitanyarahdam.

9

28.     Plaintiffs are informed and believe and therefore allege that Yalamanchili's statements concerning the ability of Princeton Square to be "stabilized," as well as Yalamanchili's assurances to Plaintiffs of an "8% return on investment," were made with knowledge that such statements were false and/or with willful disregard to the truth or falsity of such statements, so as to induce Plaintiffs to supply Yalamanchili with funds which Plaintiffs believe were used in furtherance of Yalamanchili's own self-interests, rather than the interests of Chaitanyarahdam or its investors.

29.     As of the date of this Complaint, Plaintiffs' lost investment in Chaitanyarahdam stands at more than $82,000.00.

**C.     The Yathra Transaction (Belmont Landing Apartments).**

30.     On or about August 12, 2003, Yalamanchili and CNC solicited funds from Plaintiffs via telephone and/or the United State Postal Service and/or in person to be used for the purchase of Belmont Landing Apartments, a 424-unit apartment complex built in 1988 in Riverdale, Georgia.

31.     On or about October of 2003, Yalamanchili formed Yathra Corporation, a Georgia for-profit corporation, for purposes of acquiring Belmont Landing for $22,500,000. Yalamanchili designated himself to the Board of Directors of Yathra, thus retaining the ostensible authority to bind the entity and manage Princeton Square.

32.     By way of Yalamanchili and CNC's solicitation of Plaintiffs' funds, on or about September 25, 2003 Plaintiffs purchased an equity membership interest in Yathra for $310,000. At the time of this investment, Yalamanchili represented to Plaintiffs that the Belmont Landing property was in good condition and could be stabilized so to attain a positive return for Yathra's

investors.  In a Memorandum dated January 13, 2004, Yalamanchili claimed that Plaintiffs would receive quarterly distributions based on a "10% rate of return."

33.     Shortly after Plaintiffs' initial investment in Yathra, the Belmont Landing complex fell into disrepair, and occupancy rates remained insufficient to sustain the property or pay its creditors.  Due to a shortfall of cash flow, on or about October 22, 2007 Yalamanchili solicited additional funds from Plaintiffs and other Yathra investors for the purported purpose of salvaging the property.  In response to this request, Plaintiffs infused an additional $60,000 in the property, thus bringing their total investment in Belmont Landing to $370,000.

34.     Despite Yalamanchili's representations concerning the viability of the Belmont Landing property, Plaintiffs are informed and believe and therefore allege that the poor financial and physical condition of Belmont Landing was the direct and proximate result of Yalamanchili's grossly negligent and/or deliberately wanton performance of his duties as director and/or manager of Yathra.

35.     Due to Yalamanchili's grossly negligent management of Belmont Landing and despite Plaintiffs' additional $60,000 capital infusion in the property, the mortgage-holder on the property – whose identity is currently unknown – foreclosed and retained possession of the complex.  As of the date of this Complaint, Plaintiffs have received no closing documents related to the foreclosure so as to enable Plaintiffs to write off their losses from the investment.

36.     Plaintiffs are informed and believe and therefore allege that Yalamanchili's statements concerning the ability of Yathra to be "stabilized," as well as Yalamanchili's assurances to Plaintiffs of a positive return on their investment, were made with knowledge that such statements were false and/or with willful disregard to the truth or falsity of such statements, so as to induce Plaintiffs to supply Yalamanchili with funds which Plaintiffs believe were used in

furtherance of Yalamanchili's own self-interests, rather than the interests of Yathra or its investors.

37.     As of the date of this Complaint, Plaintiffs' lost investment in Yathra stands at or above $370,000.

**D.     The CNC-Swagat Transaction (Berkshire Portfolio).**

38.     On or about September of 2004, Yalamanchili and CNC solicited funds from Plaintiffs via telephone and/or the United State Postal Service and/or in person to be used for the purchase of the Berkshire Portfolio, a composite of 18 rental properties, with 16 located in Texas and 2 located in Florida.

39.     On or about October of 2004, Yalamanchili formed CNC-Swagat, a Delaware Limited Liability Company, for purposes of acquiring the Berkshire Portfolio from Berkshire Realty.  Yalamanchili designated himself Managing Member of CNC-Swagat, thus retaining power to bind the entity and manage the Berkshire Portfolio properties.

40.     On September 9, 2004, Yalamanchili delivered a letter to Plaintiffs stating that should Plaintiffs choose to invest in the Berkshire Portfolio, that Yalamanchili felt "very comfortable to assure [Plaintiffs] a monthly cash flow distribution based on a 10% rate of return on [Plaintiffs'] investment."  As a result of Yalamanchili and CNC's solicitation of Plaintiffs' funds, on or about November of 2004 Plaintiffs purchased a half-share non-registered equity membership interest in CNC-Swagat for $500,000.

41.     CNC-Swagat closed the purchase of the Berkshire Portfolio from Berkshire Realty on or about November 18, 2004.

42.     CNC-Swagat financed the acquisition and maintenance of the Berkshire Portfolio with a first mortgage in the amount of $236,175,000; a second mortgage from LEM Financial in

12

the amount of $18,225,000; and a third mortgage in the amount of $7,106,750. For purposes of acquiring an owning an interest in the third mortgage loan to CNC-Swagat, Plaintiffs and other investors in the Berkshire Portfolio formed a general partnership called CNC-Swagat Mezzanine ("CNC Mezzanine"). The funds Plaintiffs and other investors provided to CNC Mezzanine were used as additional financing for the acquisition of several properties within the Berkshire Portfolio. Upon information and belief, the second mortgage described in this paragraph was in fact a third mortgage, the existence of the true second mortgage being fraudulently withheld from Plaintiffs. Furthermore, Plaintiffs believe that the second mortgage described in this paragraph was given in violation of the bylaws of CNC-Swagat.

43.     On or about October 30, 2008 and in response to the physical and financial deterioration of the properties within the Berkshire Portfolio, Yalamanchili informed Plaintiffs that $5,000,000 of additional funds would be needed to sustain the Portfolio and to prevent foreclosure of certain properties held by CNC-Swagat. In response to this request by Yalamanchili and for purposes of protecting their initial investment in the Portfolio, Plaintiffs infused an additional $100,000 in the properties, thus bringing Plaintiffs' total investment in the Berkshire Portfolio to $850,000.

44.     As of the date of this Complaint, Plaintiffs have received no return on their investment in the Berkshire Portfolio, and all claims by Yalamanchili that an investment in Berkshire would yield a "10% rate of return" for Plaintiffs have proven to be unfounded. Furthermore, Plaintiffs are informed and believe and therefore allege that several properties in the Portfolio have been subject to foreclosure.

13

45.     On or about January 6, 2009, LEM Financial – the holder of the second mortgage loan on the Berkshire Portfolio – notified CNC-Swagat that it had defaulted on the terms of its Loan Agreement with LEM, and asserted its right to "accelerate all sums outstanding under the loan and to exercise all of its other rights and remedies under the Loan Documents and otherwise at law and/or in equity."   Plaintiffs are informed and believe and therefore allege that this default, as well as the continued physical and financial deterioration of the properties in the Berkshire Portfolio, is the direct and proximate result of Yalamanchili's grossly negligent and/or deliberately wanton performance of his duties as Managing Member of CNC-Swagat.

46.     Furthermore, Plaintiffs are informed and believe and therefore allege that Yalamanchili's statements concerning the ability of Plaintiffs' investment in the Berkshire Portfolio to a "10%" return on investment," were made with knowledge that such statements were false and/or with willful disregard to the truth or falsity of such statements, so as to induce Plaintiffs to supply Yalamanchili with funds which Plaintiffs believe were used in furtherance of Yalamanchili's own self-interests, rather than the interests of CNC-Swagat or its investors.

47.     As of the date of this Complaint, Plaintiffs' lost investment in the Berkshire Portfolio stands at or above $850,000.

## COUNT I

### (Fraud – As To All Defendants)

48.     The Plaintiffs incorporate the allegations set forth in Paragraphs 1 through 40 of the Complaint as if fully set forth herein.

49.     The Defendants conspired to defraud the Plaintiffs in connection with the solicitation of funds for the Chaitanyarahdam, Yathra, and CNC-Swagat transactions.  The Defendants, through their oral and written representations, representations upon which the

14

Plaintiffs reasonably relied, induced the Plaintiffs to provide funds to Defendants, who knew or should have known that Plaintiffs would receive no return on their investment.

50.     As a proximate result of such false and fraudulent misrepresentations and omissions, the Plaintiffs were induced to enter into the Chaitanyarahdam, Yathra, and CNC-Swagat transactions, by which the Defendants, individually and jointly, profited to the damage of the Plaintiffs.

51.     Such misrepresentations and omissions of material fact concerning the physical condition and sustainability of the properties associated with the Chaitanyarahdam, Yathra, and CNC-Swagat transactions were made and omitted by or on behalf of each Defendant, with each Defendant's knowledge and consent, with the fraudulent intent to induce the Plaintiffs to provide funds to Defendants, all to the Plaintiffs' detriment and to the benefit of the Defendants, individually and jointly. Plaintiffs did not become aware of and did not have any reasonable means of becoming aware of the fraudulent nature of the transactions until the past twenty-four months.

52.     The Plaintiffs have suffered and are entitled to recover from the Defendants, jointly and severally, compensatory damages proximately caused by said fraudulent misrepresentations and omissions by the Defendants, the exact amount of which will be determined at trial in an amount in excess of the jurisdictional limits of this Court.

53.     Because of the intentional, oppressive and malicious nature of the fraudulent and wrongful actions of the Defendants, the Plaintiffs are entitled in addition to an award of punitive damages, the exact amount of which will also be determined at trial in an amount in excess of the jurisdictional limits of this Court.

## COUNT II

### (Breach Of Fiduciary Duty – As To
### All Defendants

54.     The Plaintiffs incorporate the allegations set forth in Paragraphs 1 through 46 of the Complaint as if fully set forth herein.

55.     By representing the physical and financial condition of the properties associated with the transactions described herein, as well as assuring Plaintiffs of a certain rate of return on their investment in the properties described herein, Defendants established a relationship of the highest trust and duty to the Plaintiffs.  These Defendants therefore undertook the fiduciary duties of loyalty and honesty to the Plaintiffs which obligated them to disclose all material facts related to the Chaitanyarahdam, Yathra, and CNC-Swagat transactions, to avoid omitting material facts concerning the transactions, to avoid self-dealing and to refrain from engaging in any act contrary to the Plaintiffs' interests.

56.     By virtue of the advisory and agency relationships which existed at all relevant times between the Plaintiffs and Defendants, Defendants owed a fiduciary duty to the Plaintiffs to act honestly, faithfully and in the Plaintiffs' best interest with respect to the Chaitanyarahdam, Yathra, and CNC-Swagat transactions.

57.     Defendants fraudulently and intentionally breached these duties to the Plaintiffs by inducing them to enter into the transactions described herein, to their benefit and to the detriment of the Plaintiffs.  Plaintiffs did not become aware of and did not have any reasonable means of becoming aware of the breach until the past twenty-four months.

58.     As a direct and proximate result of the foregoing fraudulent, intentional breach of duties by Defendants, the Plaintiffs have suffered and are entitled to recover from Defendants

16

compensatory damages in an amount to be determined at trial in an amount in excess of the jurisdictional limits of this Court.

59.     In addition, because of the intentional, oppressive and malicious nature of these Defendants' actions, the Plaintiffs are entitled to recover punitive damages in an amount to be determined at trial in an amount in excess of the jurisdictional limits of this Court.

## COUNT III

### (Unjust Enrichment – As To All Defendants)

60.     The Plaintiffs incorporate the allegations set forth in Paragraphs 1 through 52 of the Complaint as if fully set forth herein.

61.     The Defendants have each wrongfully received or retained undisclosed profits, payments, commissions, fees, gratuities or other forms of compensation in connection with the Chaitanyarahdam, Yathra, and CNC-Swagat transactions.

62.     As a result of the wrongful retention or receipt of such funds or other things of value, the Defendants, and each of them, have been unjustly enriched to the detriment of the Plaintiffs.

63.     As a direct and proximate result of the foregoing conduct, the Plaintiffs have suffered and are entitled to recover from the Defendants compensatory damages in amount to be determined at trial in an amount in excess of the jurisdictional limits of this Court.

64.     In addition, because of the intentional, oppressive and malicious nature of the Defendants' actions, the Plaintiffs are entitled to recover punitive damages in an amount to be determined at trial in an amount in excess of the jurisdictional limits of this Court.

17

## COUNT IV

### (Civil Conspiracy – As To All Defendants)

65.     The Plaintiffs incorporate the allegations set forth in Paragraphs 1 through 57 of the Complaint as if fully set forth herein.

66.     Each of the Defendants has conspired with each other to deceive, mislead and defraud the Plaintiffs in connection with the Chaitanyarahdam, Yathra, and CNC-Swagat transactions.

67.     The Defendants' conspiracy was carried out by each of them for the purpose of defrauding the Plaintiffs with respect to the Chaitanyarahdam, Yathra, and CNC-Swagat transactions and for the express purpose of concealing the physical and financial condition of the underlying properties and for using the funds supplied by Plaintiffs for improper purposes and to Plaintiffs' detriment.

68.     By virtue of each Defendant's complicity and participation in the fraudulent conspiracy to defraud the Plaintiffs in connection with the Chaitanyarahdam, Yathra, and CNC-Swagat transactions, each Defendant is liable for the damages incurred by the Plaintiffs as a result of such fraudulent and improper conduct in connection with the Chaitanyarahdam, Yathra, and CNC-Swagat transactions.

69.     As a direct and proximate result of the foregoing conduct, the Plaintiffs have suffered and are entitled to recover from the Defendants compensatory damages in an amount to be determined at trial in an amount in excess of the jurisdictional limits of this Court.

70.     In addition, because of the intentional, oppressive and malicious nature of the Defendants' actions, the Plaintiffs are entitled to recover punitive damages in an amount to be determined at trial in an amount in excess of the jurisdictional limits of this Court.

## COUNT V

### (Conversion – As To All Defendants)

71.    The Plaintiffs incorporate the allegations set forth in Paragraphs 1 through 63 of the Complaint as if fully set forth herein.

72.    The Defendants, as fiduciaries of Plaintiffs, had the legal right and responsibility to only use funds supplied by Plaintiffs in furtherance of Plaintiffs' interests.

73.    The Defendants each fraudulently, deceitfully, and wrongfully took or accepted funds that belonged to Plaintiffs and applied those funds to purposes for which were not in furtherance of Plaintiffs' interests or in furtherance of the purposes of the Chaitanyarahdam, Yathra, and CNC-Swagat transactions as represented to Plaintiffs.

74.    Plaintiffs are therefore entitled to recover from Defendants compensatory damages proximately caused by the conversion of Plaintiffs' property by the Defendants, the exact amount which will be determined at trial in an amount exceeding the minimum jurisdictional limits of this Court.

75.    Because of the intentional, oppressive, and malicious nature of the fraudulent and deceitful actions of the Defendants, the Plaintiffs are also entitled to an award of punitive damages in an amount to be determined at trial and in an amount exceeding the jurisdictional limits of this Court.

## COUNT VI

### (Accounting – As To All Defendants)

76.    The Plaintiffs incorporate the allegations set forth in Paragraphs 1 through 68 of the Complaint as if fully set forth herein.

77.     The Defendants owed a fiduciary duty to Plaintiffs in the use and management of any funds received by Defendants in connection with the Chaitanyarahdam, Yathra, and CNC-Swagat transactions.

78.     The Defendants, upon information and belief and as set forth at length above, wrongfully and intentionally mismanaged funds supplied by Plaintiffs and converted such property for purposes not in furtherance of Plaintiffs' interests.

79.     The Defendants are therefore obligated to Plaintiffs to present a complete accounting to them and to this Court of all bank accounts held in the name of Defendants, and all accounts held in the name of any third person or entity to which Defendants had signature authority during the course of the Chaitanyarahdam, Yathra, and CNC-Swagat transactions described herein through to the present.

WHEREFORE, the Plaintiffs Sai P. Gutti, M.D. and Sujata R. Gutti, M.D. respectfully request Judgment on the Complaint herein as follows:

A.      Judgment on Count I against all Defendants, jointly and severally, for compensatory and punitive damages for fraudulent misrepresentations and omissions in separate amounts to be determined at trial in excess of the minimum jurisdictional limits of this Court;

B.      Judgment on Count II against the Defendants, jointly and severally, for compensatory and punitive damages for breach of fiduciary duty in separate amounts to be determined at trial in excess of the minimum jurisdictional limits of this Court;

C.      Judgment on Count III against all Defendants, jointly and severally, for compensatory and punitive damages for unjust enrichment in separate amounts to be determined at trial in excess of the minimum jurisdictional limits of this Court;

D.      Judgment on Count IV against all Defendants, jointly and severally, for compensatory and punitive damages for the civil conspiracy carried out by them in separate amounts to be determined at trial in excess of the minimum jurisdictional limits of this Court;

E.      Judgment on Count V against all Defendants, jointly and severally, for compensatory and punitive damages for conversion in separate amounts to be determined at trial in excess of the minimum jurisdictional limits of this Court;

F.      An accounting as described in Count VI herein;

G.      Both pre-judgment and post-judgment interest on all amounts awarded to the Plaintiffs herein;

H.      A trial by jury on all Counts of the Complaint so triable;

I.      Their reasonable costs incurred herein;

J.      Reasonable attorneys' fees; and

K.      Such other and further relief to which they are entitled in addition to the costs and disbursements of this action.

Respectfully submitted,

RICHARD A. GETTY
JOE F. CHILDERS
          and
KRIS D. COLLMAN

GETTY & CHILDERS, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky  40507
Telephone:  (859) 259-1900
Facsimile:  (859) 259-1909

COUNSEL FOR PLAINTIFFS
SAI P. GUTTI, M.D. AND
SUJATA R. GUTTI, M.D.

21

## VERIFICATION

I, Sai P. Gutti, M.D., after first being duly sworn, state that I have read the factual allegations in the Complaint set out above, and that they are true and correct to the best of my knowledge and belief.

_____
SAI P. GUTTI, M.D.

COMMONWEALTH OF KENTUCKY        )
                                )
COUNTY OF PIKE                  )

The foregoing instrument was subscribed and sworn to before me by Sai P. Gutti, M.D. on this the 3 day of May, 2010.

My Commission expires: 8-13-2013 .

_____
NOTARY PUBLIC, STATE AT LARGE,
KENTUCKY

## VERIFICATION

I, Sujata R. Gutti, M.D., after first being duly sworn, state that I have read the factual allegations in the Complaint set out above, and that they are true and correct to the best of my knowledge and belief.

_____
SUJATA R. GUTTI, M.D.

COMMONWEALTH OF KENTUCKY        )
                                )
COUNTY OF PIKE                  )

The foregoing instrument was subscribed and sworn to before me by Sujata R. Gutti, M.D. on this the 3 day of May, 2010.

My Commission expires: 8-13-2013 .

_____
NOTARY PUBLIC, STATE AT LARGE,
KENTUCKY

U:\GK&M\kcollman\pleadings\Gutti\Gutti Complaint FINAL 4-29-10.doc